IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEE HOLDEN PARKER,

     **Plaintiff,**

**v.**

**JOHN EVANS, et al.**

     **Defendant.**                   **Case No.05-cv-783-DRH**

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I.  INTRODUCTION

This matter comes before the Court on a Motion for Summary Judgment filed by defendants Phillip Baker, Sherry Benton, John Evans, William Gene Pursell, Ronald Williams, and Barbara A. Wingerter (Doc. 34).  For the reasons set forth below, said Motion is ultimately granted.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Complaint and Procedural History

Plaintiff filed his **§ 1983** lawsuit in this matter on October 31, 2005 (Doc. 1).  Plaintiff's factual allegations are as follows:

Plaintiff is a "medically designated, wheelchair bound inmate."  On September 15, 2004, defendant Williams escorted Plaintiff in his wheelchair to the segregation unit at Pinckneyville Correctional Center ("Pinckneyville").  Defendant

Williams told Plaintiff he did not deserve a wheelchair. Plaintiff replied that defendant Williams was not a doctor. In response, defendant Williams deliberately ran the wheelchair into a rut in the sidewalk, causing Plaintiff to fall out of the wheelchair, skinning his hands and knees. Upon arrival at the segregation receiving center, defendant Williams instructed the line officer to lock the wheelchair in the segregation unit personal property storage room. Defendant Williams then placed Plaintiff in the segregation cell without a wheelchair. Plaintiff states that during his stay in segregation he repeatedly asked prison staff who passed by his cell, including defendants Williams, Baker, and Evans, for his wheelchair because he kept falling down without it and injuring himself. They told him that a new prison policy forbade wheelchairs inside segregation cells. Defendant Baker, the shift segregation supervisor, repeatedly represented to Plaintiff that due to the new policy, he was not allowed to have a wheelchair in his cell. At the end of his term of segregation, on March 14, 2005, Plaintiff and defendant Williams had a disagreement regarding non-segregation cell placement, after which defendant Williams escorted Plaintiff in his wheelchair to another segregation cell. Defendant Williams placed Plaintiff in the cell with the wheelchair. When the wheelchair was not taken away from him in the new segregation cell, Plaintiff realized that no policy forbidding wheelchairs in segregation cells existed; defendants Williams, Baker, and Evans had been lying to him.

Plaintiff thus claims he was denied a wheelchair, to which he was entitled, for six months, during which time he fell and sustained injuries. Plaintiff further claims Defendants acted with deliberate indifference towards his serious

medical needs, in violation of the Eighth Amendment (Doc. 1).

Plaintiff's allegations continue as follows:

On March 14, 2005, when Plaintiff was to be released from segregation, he was assigned to a smoking cell, despite a non-smoking contract on file. He refused placement in the cell. Defendant Williams became angry, yelled at Plaintiff, and ordered defendant Baker to prepare a disciplinary report against Plaintiff for refusing his housing assignment. Williams also confiscated some of Plaintiff's personal property, including a "packaged and prepared," but unfiled lawsuit ("Lawsuit One") complaining of widespread misconduct and poor prison conditions at Pinckneyville. Lawsuit One was never returned to Plaintiff. Defendant Williams later admitted to confiscating it (Doc. 1).

Defendant Evans had long known of the lawsuit due to an ongoing dispute between Plaintiff and the law library paralegal about the copying of the voluminous lawsuit. Plaintiff states he had several conversations with defendant Evans about his disagreement with the paralegal and wrote numerous letters to defendant Evans about the problem, some of which he attaches as exhibits to his Complaint. Plaintiff filed a separate lawsuit ("Lawsuit Two") in this Court against the paralegal, defendant Evans, and defendant Williams, alleging denial of access to courts regarding the photocopying of Lawsuit One. Plaintiff alleges that after finding out about Lawsuit Two, defendant Evans directed defendant Williams to confiscate Lawsuit One in an act of retaliation for the preparation of both lawsuits and Plaintiff's prolific filing of grievances. Plaintiff also alleges that defendant Evans

conspired with defendants Williams and Baker to deny him a wheelchair in retaliation for the lawsuit and grievances. Plaintiff alleges that defendants Wingerter, Pursell, and Benton, by denying his grievances regarding the wheelchair, became part of the conspiracy among defendants Williams, Baker, and Evans, to deprive Plaintiff of his wheelchair in retaliation for preparing the lawsuit and filing grievances. Defendant Evans further participated in the conspiracy by concurring in the denial of the grievance. On April 10, 2005, Plaintiff filed a grievance regarding the six months he was denied the wheelchair (*see* Doc. 42-2, pp. 1-3).

On August 10, 2006, the District Court completed its threshold review of the Complaint, finding that Plaintiff presented two claims against the six defendants: one for deliberate indifference to his serious medical needs in denying the wheelchair, and two, for withholding the wheelchair in retaliation for lawsuits and grievances (Doc. 11). After discovery, Defendants filed a Motion for Summary Judgment arguing that they are all entitled to judgment in their favor under various theories, discussed herein (Doc. 34).

On August 22, 2008, United States Magistrate Judge Donald G. Wilkerson conducted a hearing to determine whether Plaintiff had exhausted his administrative remedies prior to filing suit (Doc. 50). ***See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)**. Based upon the testimony and evidence adduced at that hearing, Judge Wilkerson issued a Report and Recommendation finding that the Court find Plaintiff did, in fact, exhaust his available administrative remedies (Doc. 60).

**B.      Defendants' Motion for Summary Judgment**

In support of their Motion for Summary Judgment, Defendants cite the following undisputed material facts:

Plaintiff's complaint concerns the deprivation of a wheelchair between September 15, 2004, and March 14, 2005 (Doc. 35-2, pp. 3-4; Doc. 35-3, pp. 20-21). During that time period, defendant John Evans was the warden at Pinckneyville Correctional Center (Doc. 35-2, p. 12); defendant Ronald Williams was a Correctional Lieutenant at Pinckneyville (Doc. 35-2, p. 15); defendant Baker was a Correctional Officer at Pinckneyville (Doc. 35-2, p. 16); defendant Wingerter was a Correctional Counselor at Pinckneyville (Doc. 35-2, p. 17); defendant Pursell was a Grievance Officer at Pinckneyville (Doc. 35-2, p. 19); and defendant Benton was the Chairperson of the Administrative Review Board of the Illinois Department of Corrections (Doc. 35-2; p. 21).

**1.      Denial of Wheelchair in Violation of the Eighth Amendment**

On February 25, 2003, Dr. Garcia, a physician at Pinckneyville, granted Plaintiff a long distance wheelchair permit (Doc. 35-3, p. 1; Exh. H, Callahan Affidavit ¶ 2). Plaintiff disputes this fact, arguing that the permit issued on February 25, 2003, was not limited to long distances. He includes a copy of the medical permission form indicating he was authorized to have a wheelchair indefinitely. While the document does not contain an indication that the wheelchair was limited to long-distance use, it also does not it indicate whether Plaintiff was permitted to have a wheelchair in his cell (Doc. 37, p. 23, Exh. A). Plaintiff testified at his

deposition that no doctor ever told him he needed to have a wheelchair inside his cell (Doc. 35-2, p. 9 - Parker Dep., 56:5-9).

While Plaintiff's claim for deprivation of a wheelchair focuses upon the time between September 15, 2004 through March 14, 2005, Plaintiff did not present himself to the Health Care Unit with any injuries during that time (Doc. 35-3, p. 1; Exh. H, Callahan Affidavit). Plaintiff testified that he did not do so because he was not seriously hurt during that time (Doc. 53-2, p. 5; Parker Deposition p. 51).

Defendants Baker, Benton, Pursell, Williams, and Wingerter did not have authority to determine whether Plaintiff was entitled to have a wheelchair in his cell, nor the authority to provide an inmate with a wheelchair for in-cell use without medical authorization (Doc. 35-2, pp. 15, 16, 17, 19, and 23; Exhs. C-G). Defendant Evans does not recall ever receiving any verbal or written complaint from Plaintiff regarding his lack of access to a wheelchair in his segregation cell between September 15, 2004, and March 14, 2005 (Doc. 35-2, p. 12; Exh. B, Evans Affidavit ¶3). The signature of the Chief Administrative Officer on the Grievance Officer's Report for Plaintiff's grievance regarding the denial of a wheelchair in his cell is not that of defendant Evans, but that of Earl Wilson, a designee (Doc. 35-2; pp. 12-13; Exh. B, Evans Affidavit ¶6).

Defendants Benton, Pursell, and Wingerter did not personally confiscate Plaintiff's wheelchair; they did not have any authority to provide him with a wheelchair in his cell; and they were involved in this case only through their handling of Plaintiff's April 10, 2005, grievance (Doc. 35-2, pp. 17, 19-20, and 23; Exhs. E,

F, and G, Wingerter Affidavit ¶ 4, Pursell Affidavit ¶ 4, Benton Affidavit ¶ 9). Defendants also claim that the issue of whether Plaintiff was deprived a wheelchair in his cell was never properly before defendant Benton for review (Doc. 35-2, p. 23; Exh. G, ¶ 8).

### 2. Retaliation for Filing Lawsuits

Plaintiff alleges that the Defendants deprived him of a wheelchair in his segregation cell in retaliation for filing grievances and a lawsuit (Doc. 1). Plaintiff filed Lawsuit One in this District on January 24, 2005. Only one Defendant in the instant case, William Pursell, was a named defendant in Lawsuit One. Plaintiff moved to voluntarily dismiss Lawsuit One before any of the named defendants were served. *See Parker v. Ill. Dep't of Corr.*, **Case. No. 05-cv-44-JPG (S.D. Ill., filed Jan. 24, 2005)**. Defendants in this action claim they were not aware of Lawsuit One (Doc. 35-2, pp. 13, 15, 16, 17, 19, and 23; Exhs. B-G). Plaintiff filed Lawsuit Two in this District alleging denial of access to courts against the Pinckneyville law library paralegal, defendant Evans, and defendant Williams. *See Parker v. Evans*, **Case No. 05-cv-143-WDS (S.D. Ill., filed Feb. 25, 2005)**.

## III. <u>DISCUSSION</u>

**A.     Legal Standard**

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005);** *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, **409 F.3d 833, 836 (7th Cir. 2005)**.  The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, **398 U.S. 144, 160 (1970)**. *See also Lawrence v. Kenosha County*, **391 F.3d 837, 841 (7th Cir. 2004)**.  A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004)**.  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004)**. *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**  A showing of a mere factual disagreement between the

parties is insufficient; the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, 259 F.3d at 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth

specific facts showing there is a genuine issue for trial." **FED. R. CIV. P. 56(e)(2)**. The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" ***Celotex*, 477 U.S. at 324**. A prisoner plaintiff may rely on the factual assertions made in a verified complaint as he would on an affidavit submitted in response to a motion for summary judgment. ***See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996)**.

Affidavits filed in support of or opposed to summary judgment must be based upon the personal knowledge of the affiant. ***See* FED. R. CIV. P. 56(e)(1)**. "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" ***Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)). *See also Witte v. Wisconsin Dep't of Corr.*, 434 F.3d 1031, 1037 (7th Cir. 2006) (affidavit merely repeating unsupported allegations in complaint was not a statement based upon personal knowledge "that may properly be considered in an affidavit"); *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.")**.

**B.     Deliberate Indifference to Plaintiff's Serious Medical Needs**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976)**. In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." ***Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted)**. With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." ***Foelker v. Outagamie County*, 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted)**.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" ***Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." ***Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985)**. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. ***Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072**

**(7th Cir. 1987)**.  Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.  **Greeno, 414 F.3d at 653**.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.**" **Farmer v. Brennan**, 511 U.S. 825, 842 (1994) (citations omitted)**.

### 1.    Defendant Williams

Plaintiff alleges that defendant Williams personally confiscated his wheelchair and placed him in the segregation cell without one.  Plaintiff further alleges that defendant Williams took the wheelchair despite the fact that Plaintiff had always had a wheelchair in his cell in prior housing assignments, and despite the wheelchair permit authorized by medical staff.  As to defendant Williams's state of mind, Plaintiff alleges that defendant Williams, in anger, told him he did not need a wheelchair.  Thereafter, defendant Williams allegedly caused Plaintiff to fall out of his wheelchair and injure himself.  As a result of not having a wheelchair, Plaintiff claims he fell repeatedly.  Therefore, Plaintiff asserts that defendant Williams acted with deliberate indifference to his serious medical need in denying him use of a wheelchair in his segregation unit cell.

Defendants provide evidence that medical staff had authorized Plaintiff's

use of a wheelchair for long distances. Plaintiff disputes whether the authorization was limited to long distances. Defendants point to the fact that Plaintiff testified in deposition that no doctor ever told him he needed to have a wheelchair inside his cell. Plaintiff points to facts that he had always had a wheelchair in his cell before September 15, 2004, and it was returned to him on March 14, 2005, once he was housed in another segregation unit cell. Without the use of a wheelchair while in his segregation until cell, Plaintiff claims he lacked the physical means to safely maneuver around his cell. Based on these disputed facts, the Court believes that Plaintiff has met his burden of showing a genuine issue regarding his serious medical need for a wheelchair.

This issue of fact will not be material, or outcome determinative, however, unless Plaintiff also demonstrates a genuine issue of material fact whether defendant Williams acted with deliberate indifference to this serious medical need. Defendant Williams asserts he had no authority to determine whether an offender was authorized to keep a wheelchair in his cell, nor did he have the authority to provide him with one. Plaintiff contends that Williams confiscated the wheelchair after an angry exchange with Plaintiff in which Williams told him he did not deserve a wheelchair, and after he had caused Plaintiff to fall out of his wheelchair and injure himself. Further, Plaintiff contends that defendant Williams confiscated the wheelchair despite his knowledge that Plaintiff had difficulty moving without it and knowledge that without the wheelchair, Plaintiff could fall and hurt himself.

Defendant Williams avers in his affidavit that Plaintiff "was not

authorized to keep the wheelchair in his cell in disciplinary segregation" (Doc. 35-2, p. 15; Exh. C, ¶3). Plaintiff has provided evidence contradicting this fact. Plaintiff's version of events demonstrates that defendant Williams may have acted with something more than negligence in confiscating Plaintiff's wheelchair, thus raising a genuine issue of material fact as to his state of mind.

Further, because Plaintiff's Complaint is verified, which allows the Court to treat it as an affidavit, it directly contradicts the assertions in defendant Williams's affidavit. The Court may not "resolve swearing contests between litigants" at the summary judgment stage. **Payne, 337 F.3d 767, 770 (7th Cir. 2003)**. "Where the materials facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied." **Id. at 773**. That is exactly the case here. Thus, a question of material fact exists as to whether defendant Williams acted with deliberate indifference.

### 2. Defendant Baker

Defendant Baker avers that he has no recollection as to whether Plaintiff was authorized to have a wheelchair in his cell during the relevant time period (Doc. 35-2, p. 16; Baker Affidavit ¶ 3). He further avers that he did not conspire with defendants Williams and Evans to deprive Plaintiff of a wheelchair, and that he has never confiscated a wheelchair from any inmate, including Plaintiff, without prior authorization (Doc. 35-2, p. 16; Baker Affidavit ¶ 4). Conversely, Plaintiff states that defendant Baker, who worked on the segregation unit where he was housed,

frequently went by Plaintiff's cell and had seen him fall because he did not have a wheelchair to use. Plaintiff further claims that defendant Baker told Plaintiff that, as a policy, wheelchairs were no longer allowed inside segregation cells.

Plaintiff's averments that defendant Baker intentionally misrepresented the policy regarding wheelchairs in cells, knew that Plaintiff was falling down and hurting himself without the wheelchair, and continued to represent that there was a policy disallowing wheelchairs is sufficient to raise a genuine issue of material fact regarding defendant Baker's state of mind and whether, therefore, he acted with deliberate indifference.

### 3.    Defendant Evans

Plaintiff claims that defendant Evans was the mastermind behind the conspiracy to deprive him of his wheelchair in retaliation for Plaintiff's lawsuits. Plaintiff alleges that defendant Evans ordered defendant Williams to confiscate his wheelchair. Plaintiff also alleges that defendant Evans told Plaintiff that a new policy existed banning wheelchairs in segregation cells.

Defendant Evans avers that he no recollection of ever receiving any complaints from Plaintiff regarding the denial of his wheelchair, and that he has no personal knowledge regarding Plaintiff's access to a wheelchair during the time period at issue. He avers that he did not conspire with any staff to deprive Plaintiff of his wheelchair. In response, Plaintiff reiterates his discussions and letters to defendants Evans regarding Lawsuit One, and defendant Evans's misrepresentation of the nonexistent policy.

Plaintiff does not assert that defendant Evans had any knowledge of Plaintiff's medical need for a wheelchair in his segregation cell. Thus, to misinform Plaintiff of a nonexistent policy, while certainly not commendable, cannot constitute deliberate indifference because there the record does not show defendant Evans had knowledge of Plaintiff's serious medical need at the time during which Plaintiff alleges he was deprived of the use of a wheelchair in his segregation cell. Defendant Evans cannot be culpable for deliberate indifference without knowledge that Plaintiff had a serious medical need of the wheelchair. Thus judgment in favor of defendant Evans on Plaintiff's claim of deliberate indifference is granted.

## C.    Retaliation

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." ***DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000)**. Prisoners have a constitutional right to access to the courts. This right encompasses the right to pursue administrative remedies, the exhaustion of which is a prerequisite to filing suit. ***Id.*** Prison officials, therefore, may not retaliate against a prisoner for filing a grievance. ***Id.*** "It is not enough for a plaintiff to show that a given defendant knows of protected speech; the plaintiff also must show that the speech, and the defendant in question, played a causal role in the adverse decision." ***Nisenbaum v. Milwaukee County*, 333 F.3d 804, 807 (7th Cir. 2003) (citing *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977))**. That protected speech was a motivating factor in the adverse action can rarely be

proven by direct evidence. ***Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)**. Thus, courts may infer retaliation from "a chronology of events." ***Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988) (citing *Murphy*, 833 F.2d at 108-09)**. However, an allegation of only the "ultimate fact" of retaliation is insufficient to sustain a retaliation claim. ***Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)**.

### 1.    Defendant Williams

Plaintiff alleges that defendant Williams denied him a wheelchair in segregation at the behest of defendant Evans, in retaliation for filing lawsuits and grievances. Defendant Williams avers that he was not aware Plaintiff had filed or attempted to file Lawsuit One. Defendant Williams does not make any averment regarding knowledge of Lawsuit Two. Plaintiff points to no additional evidence that defendant Williams acted with a retaliatory motive in confiscating the wheelchair.

The Court finds that Plaintiff has not outlined a chronology indicating that defendant Williams denied Plaintiff the wheelchair in retaliation for the lawsuits. The taking of the wheelchair occurred before Plaintiff filed Lawsuit Two. Thus, it could not have been the cause. While Plaintiff may present a timeline that the March 14, 2005 confiscation of Lawsuit One was done in retaliation for Plaintiff's filing of Lawsuit Two, the confiscation of Lawsuit One is not at issue in this case. Plaintiff offers no evidentiary support for his belief that defendant Evans directed defendant Williams to confiscate the wheelchair. Plaintiff's belief that defendant Williams acted on the orders of defendant Evans, who was acting in retaliation for either lawsuit, or

both, is not a statement grounded in first-hand personal experience or observation. It amounts to nothing more than Plaintiff's own speculation or hunch. Such uncorroborated testimony is insufficient to defeat a motion for summary judgment, as it would constitute inadmissible evidence at trial. ***See Weeks,* 126 F.3d at 939**. Accordingly, summary judgment is granted as to defendant Williams regarding Plaintiff's retaliation claim.

### 2. Defendant Baker

Plaintiff's claim regarding defendant Baker's retaliatory motive fails for the same reasons. Plaintiff has offered no direct evidence of retaliation, and he has not presented a timeline from which the Court could infer retaliation because the wheelchair was confiscated prior to the filing of both lawsuits. Again, Plaintiff's assertions that defendant Baker was acting on the orders of defendant Evans, who was acting in retaliation for Lawsuit One is not based on personal knowledge, and is therefore insufficient to overcome summary judgment. Accordingly, summary judgment is also granted as to defendant Baker as to Plaintiff's retaliation claim.

### 3. Defendant Evans

Plaintiff claims that defendant Evans became aware of Lawsuit One due to the dispute between Plaintiff and the law library paralegal. Plaintiff states that he spoke with defendant Evans personally a number of times between June and September 2004 and presents evidence that he sent defendant Evans a number of letters regarding the photocopying of Lawsuit One. Thus, Plaintiff claims that

defendant Evans was aware of Lawsuit One and retaliated against Plaintiff for it by ordering defendant Williams to confiscate his wheelchair. Plaintiff avers that he personally told defendant Evans about the lawsuit problems with the paralegal, which thereby gave defendant Evans notice of Lawsuit One. Yet, Plaintiff has no personal knowledge that Evans received his memos. Plaintiff also has no personal knowledge that defendant Evans directed Williams to confiscate the wheelchair, nor does he make an assertion that defendant Evans personally confiscated the wheelchair. His belief that defendant Evans directed defendant Williams to confiscate the wheelchair in retaliation for Lawsuit One is again nothing more than speculation or hunch, upon which an affidavit cannot be based. Plaintiff has not demonstrated a genuine issue of material fact whether defendant Evans was either responsible for taking or personally took the wheelchair. Plaintiff's claim that defendant Evans specifically directed defendant Williams to take the wheelchair is also unsupported. Thus, even if defendant Evans was aware of Lawsuit One due to Plaintiff's oral and written complaints, Plaintiff has not submitted proper evidence showing that defendant Evans personally took Plaintiff's wheelchair as an act of retaliation or was responsible for its taking. Thus, summary judgment is granted in favor of defendant Evans as to Plaintiff's retaliation claim.

**D.    Personal Involvement**

To be held individually liable for the deprivation of a constitutional right, a defendant must be "personally responsible for the deprivation." ***Sanville v.***

*McCaughtry*, **266 F.3d 724, 740 (7th Cir. 2001)**.  A defendant cannot be held liable in an action for violation of a civil right for wrongs in which he had no personal involvement.  *See Eades v. Thompson*, **823 F.2d 1055, 1063 (7th Cir. 1987) ("Each individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group.")**.

　　1.　　**Defendants Wingerter, Pursell, and Benton**

　　　　Defendants Wingerter Pursell, and Benton were involved in the alleged deprivation only through the grievance process.  None of them had authority to determine whether Plaintiff was entitled to a wheelchair, or to provide Plaintiff with a wheelchair.  Furthermore, none of them participated in personally confiscating the wheelchair.  Plaintiff points to two categories of evidence in an attempt to rebut these facts: 1) his own statements that these defendants are part of a conspiracy to deny him his civil rights and that their participation in this conspiracy makes them liable for the denial of the wheelchair and the injuries he sustained as a result of its denial, and 2) his assertion that participation in the grievance process put Defendants on notice of the deprivation and their failure to cure the alleged deprivation makes them liable for it.  As demonstrated below, neither of these categories of evidence are sufficient to sustain Plaintiff's burden to demonstrate genuine issues of material fact.

　　　　The non-moving party must "set forth specific facts showing a genuine issue for trial."  **FED. R. CIV. P. 56(e)(2)**.  "The object of this provision is not to

replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888 (1990)**. Such conclusory statements are not sufficient to meet the burden of demonstrating a genuine issue of material fact. *Payne v. Pauley*, **337 F.3d 767, 773 (7th Cir. 2003)**. Further, an affidavit in support of or opposed to summary judgment must be based upon the personal knowledge of the affiant. Plaintiff's speculations that all the Defendants are involved in a conspiracy against him do not rise above the level of speculation on Plaintiff's part because they are not "grounded in observation or other first-hand personal experience." *Id.* **at 772**. In the face of evidence that none of the Defendants had authority to authorize or provide him with a wheelchair, and did not participate in the actual taking of the wheelchair, Plaintiff's conclusory allegations, which are not based upon personal experience, that defendants Wingerter, Pursell, and Benton were part of a conspiracy to deny him a wheelchair and therefore liable are insufficient to overcome Defendants' motion for summary judgment. *See Weeks*, **126 F.3d at 939**.

Plaintiff's assertion that the grievance process itself put defendants Wingerter, Pursell, and Benton on notice of the deprivation enough to hold them personally responsible for the denial of the wheelchair also fails to demonstrate a genuine issue of material fact because the chronology of the alleged deprivation undermines Plaintiff's assertion. Plaintiff did not file his first grievance regarding the denial of the wheelchair until April 10, 2005, 27 days after the wheelchair had been

returned to him.  If the grievance put these Defendants on notice of the deprivation, then they did not know of it until *after* it had already concluded.  They could not, therefore, have been personally involved in the denial of Plaintiff's use of a wheelchair in violation of the Eighth Amendment.[1]  The same chronology belies these Defendants' lack of participation in a retaliatory conspiracy to deny Plaintiff use of a wheelchair.

Finally, the Court notes liability for a constitutional violation does not attach to defendants who acted only to process administrative grievances.  "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." ***George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (a defendant "who rejects an administrative complaint about a completed act of misconduct" does not violate the Constitution)**.  Based on all the foregoing, summary judgment is granted in favor of defendants Wingerter, Pursell, and Benton on Plaintiff's claims against them.

**2.     Defendant Evans**

For the same reasons that defendants Wingerter, Pursell, and Benton are not personally responsible for denying Plaintiff a wheelchair by participating in the grievance process, defendant Evans cannot be held liable for concurring in the denial of the grievance.  Defendant Evans also cannot be held liable on a theory of

---

[1] Even if these Defendants did know of the deprivation during the relevant time period, they were under no duty to provide Plaintiff with a wheelchair or to ensure that he be provided with one.  Tort law does not impose a "duty of rescue."  "A public employee who knows about a danger need not act to avert it," unless the employee is "responsible for creating the peril that creates an occasion for rescue." ***Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2008)**.

supervisory responsibility for the denial of the wheelchair. "The doctrine of respondeat superior does not apply to **§ 1983** actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" ***Sanville*, 266 F.3d at 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).** Accordingly, summary judgment is granted in favor of defendant Evans.[2]

**E.    Qualified Immunity**

Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" ***Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir.2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).** However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense. ***Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir.2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).** The threshold inquiry is whether a defendant's conduct violated Plaintiff's constitutional rights. ***Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).** The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time, that

---

[2] The Court notes that it has already found defendant Evans is entitled to summary judgment as to Plaintiff's claims against him, but also includes him in its "personal involvement" analysis as Plaintiff had alleged defendant Evans was liable for signing off on the denial of Plaintiff's grievances at issue in this case.

is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ***Saucier*, 533 U.S. at 201-02**. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is inappropriate." ***Id.* at 202**.

The Seventh Circuit has expressly ruled that in a **§ 1983** case, where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. ***Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir.1995))**. Because this Court has concluded above that defendants Wingerter, Pursell, Benton, and Evans did not violate Plaintiff's constitutional rights, it is thus unnecessary to determine whether these defendants are entitled to qualified immunity.

As to defendants Williams and Baker, the Court has determined that there exist genuine issues of material fact regarding whether these Defendants violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical need for use of a wheelchair in his segregation cell. Because disputed questions of fact remain regarding whether Defendants' alleged conduct violated Plaintiff's constitutional rights, summary judgment in favor of defendants Williams and Baker would be inappropriate based upon qualified immunity. ***Spiegla v. Hull*, 371 F.3d 928, 940 (7th Cir. 2004) (stating that "before determining whether a right was clearly established, courts must first determine**

whether, taking the facts in the light most favorable to the plaintiff, the official violated a constitutional right"**) (**citing *Saucier*, 533 U.S. at 201**). More specifically, in this case, if either defendant Williams or Baker were found to have deliberately acted to deprive Plaintiff of his wheelchair despite their knowledge that he was required (or obviously needed) to have use of a wheelchair in his segregation cell, this would be considered an "unreasonable act," that Defendants should know would likely violate Plaintiff's constitutional rights.[3] Accordingly, at this point, the Court finds the doctrine of qualified immunity inapplicable to shield defendants Williams and Baker from liability as to Plaintiff's claims.

**F.      Actual Injury**

Yet, there is one more hurdle Plaintiff must overcome to prevail on his Eighth Amendment claim of deliberate indifference to a serious medical need: he must show he suffered an actual injury therefrom. As has been clearly stated by the Seventh Circuit in **Walker v. Peters**, "the decisive factor" in granting summary judgment as to a plaintiff's deliberate indifference to his serious medical needs claim was that there was no evidence showing that he was injured by the defendants' refusal on some occasions to provide him with medical treatment." **233 F.3d 494, 502 (7th Cir. 2000) ("Because [the plaintiff] cannot show injury, he cannot make out a claim of deliberate indifference relating to his treatment as a hemophiliac.").** The Court finds *Walker* insightful, as here, Plaintiff also has a

---

[3] Assuming these Defendants were not, in fact, following departmental policies or orders from a superior to not allow inmates use of a wheelchair in their segregation cell.

claim for deliberate indifference towards his serious medical needs for Defendants' alleged failure to provide him with a wheelchair while housed in his segregation cell. As Defendants assert, Plaintiff does not present sufficient evidence showing a genuine issue of material fact regarding actual injury suffered as a result of falling in his cell from the alleged deprivation of a wheelchair. Defendants submit Plaintiff's medical records for the relevant time period indicating Plaintiff never complained to medical personnel of an injury resulting from the absence of a wheelchair. Further, in his deposition, Plaintiff testified that he did not seek medical treatment during the six-month period in segregation because he did not have any resultant injuries from the alleged deprivation of a wheelchair.[4]

To overcome this assertion of fact by the Defendants, Plaintiff needed to respond by pointing to specific evidence in the record or by affidavit or other discovery method attached to his motion for summary judgment, showing there exists a genuine issue of material fact on this point. Plaintiff points to no evidence contradicting this fact. Thus, he has not met his burden of demonstrating a genuine issue of material fact regarding actual injury, and so his claim of deliberate indifference against all Defendants fails as a matter of law. Ultimately, then, despite

---

[4] During his deposition, Plaintiff testified as follows:

Q: When you were at Pinckneyville in Cell 34 for these six months from September to March –

A: I never complained to the hospital about being hurt because I wasn't that seriously hurt at the time.

(Doc. 35, Ex. A - Plf's Dep., 51:6-11.)

the fact that the Court found existing questions of material fact regarding whether defendants Williams and Baker acted with deliberate indifference towards Plaintiff's serious medical need, as Plaintiff has failed to show actual injury due to their actions, summary judgment must be granted in favor of defendants Williams and Baker as to Plaintiff's deliberate indifference claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 34) is **GRANTED** in favor of defendants Wingerter, Pursell, Benton, Evans, Williams and Baker as to all of Plaintiff's claims against them, and they are hereby **DISMISSED** from the action. Further, because the Court has now resolved the issues in this Order, the Court **FINDS AS MOOT** Plaintiff's Motion for Dispositive Court Memorandum and Order (Doc. 38). The Clerk is instructed to enter judgment accordingly, the case file to be closed.

**IT IS SO ORDERED**.

Signed this 25th day of March, 2009.

/s/        *David R Herndon*

**Chief Judge**
**United States District Court**